1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GARY DELMAR HENDERSON,　　　　　）

　　　　　Petitioner,　　　　　　　）
　　　　　　　　　　　　　　　　　）
　v.　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
KATHLEEN ALLISON, Warden,　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　Respondent.　　　　　　　）
　　　　　　　　　　　　　　　　　）

1:11-cv-00391 LJO MJS HC

FINDINGS AND RECOMMENDATION
REGARDING RESPONDENT'S MOTION
TO DISMISS

[Doc. 13]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Kathleen Allison, as warden of California Substance Abuse Treatment Facility, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented in this action by Craig S. Meyers, Esq., of the Office of the Attorney General for the State of California.

## I.　　BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, upon being convicted by a jury of first degree burglary, assault with a semiautomatic firearm, forcible rape,

1  penetration by a foreign object, first degree residential robbery, dissuading a witness, and false

2  imprisonment by violence. (See LD No. 1.[1]) On March 9, 2007, Petitioner was sentenced to

3  serve an indeterminate term of four-hundred and ninety four (494) years to life. (Id.) On

4  February 19, 2008, the California Court of Appeal, Fifth Appellate District, affirmed the

5  judgment. (LD 2.) Petitioner sought review before the California Supreme Court, which was

6  denied on April 30, 2008. (LDs 3-4.)

7        Starting in October 2008, Petitioner filed ten post-conviction collateral challenges with

8  respect to conviction in the state courts, as follows:

9        1.   <u>Tulare County Superior Court</u>
         Filed: October 19, 2008[2];

10           Denied: October 24, 2008;

11        2.   <u>California Court of Appeal, Fifth Appellate District</u>
         Filed: December 9, 2008[3];

12           Denied: January 5, 2009;

13        3.   <u>California Court of Appeal, Fifth Appellate District</u>
         Filed: February 16, 2009[4];

14           Denied: June 12, 2009;

15        4.   <u>California Supreme Court</u>
         Filed: March 12, 2009[5];

16           Denied: August 12, 2009;

17        5.   <u>Tulare County Superior Court</u>

18

19

20

---

[1] "LD" refers to the documents lodged by Respondent in support of his motion to dismiss.

[2] Under the mailbox rule, the Court deems petitions filed on the date Petitioner handed a petition to prison authorities for mailing. <u>Houston v. Lack</u>, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L. Ed. 2d 245 (1988); <u>Campbell v. Henry</u>, 614 F.3d 1056 (9th Cir. 2010); <u>see also</u> Rule 3(d) of the Rules Governing Section 2254 Cases. Although the petition was filed on October 22, 2008, pursuant to the mailbox rule the Court considers the petition filed on October 19, 2008, the date Petitioner signed the petition.

[3] Although the petition was filed on December 10, 2008, under the mailbox rule the Court will consider the petition filed on December 9, 2008, the date Petitioner signed the petition.

[4] Although the petition was filed on February 18, 2009, under the mailbox rule the Court will consider the petition filed on February 16, 2009, the date Petitioner signed the petition.

[5] Although the petition was filed on March 16, 2009, under the mailbox rule the Court will consider the petition filed on March 12, 2009, the date Petitioner signed the petition.

Filed: March 18, 2009[6];
Denied: March 23, 2009;

6.      California Court of Appeal, Fifth Appellate District
        Filed: August 25, 2009[7];
        Denied: January 7, 2010;

7.      Tulare County Superior Court
        Filed: September 3, 2009[8];
        Denied: September 15, 2009;

8.      California Supreme Court
        Filed: September 8, 2009[9];
        Denied: February 24, 2010;

9.      California Supreme Court
        Filed: December 4, 2009[10];
        Denied: June 9, 2010;

10.     California Court of Appeal, Fifth Appellate District
        Filed: December 4, 2009[11];
        Denied: January 7, 2010.

(See LDs 5-24.)

On February 12, 2011[12], Petitioner filed the instant federal Petition for Writ of Habeas Corpus in this Court. On November 14, 2011, Respondent filed a Motion to Dismiss the petition as being filed outside the one-year limitations period prescribed by 28 U.S.C. § 2244(d). (Mot. to Dismiss, ECF No. 13.) Petitioner filed a response to the motion on

---

[6]Although the petition was filed on March 20, 2009, under the mailbox rule the Court will consider the petition filed on March 18, 2009, the date Petitioner signed the petition.

[7]Although the petition was filed on September 4, 2009, under the mailbox rule the Court will consider the petition filed on August 25, 2009, the date Petitioner signed the petition.

[8]Although the petition was filed on September 10, 2009, under the mailbox rule the Court will consider the petition filed on September 3, 2009, the date Petitioner signed the petition.

[9]Although the petition was filed on September 11, 2009, under the mailbox rule the Court will consider the petition filed on September 8, 2009, the date Petitioner signed the petition.

[10]Although the petition was filed on December 7, 2009, under the mailbox rule the Court will consider the petition filed on December 4, 2009, the date Petitioner signed the petition.

[11]Although the petition was filed on December 8, 2009, under the mailbox rule the Court will consider the petition filed on December 4, 2009, the date Petitioner signed the petition.

[12]Petitioner's federal petition was filed on February 17, 2011, under the mailbox rule the Court will consider the petition filed on February 12, 2011, the date Petitioner signed the petition.

1   January 31, 2012. (Response, ECF No. 17.) Respondent filed a reply on April 24, 2012.

2   (Reply, ECF No. 22.) Petitioner requested an opportunity to address the material presented

3   in the reply. The Court granted Petitioner the right to respond to the reply, and Petitioner filed

4   an answer to the reply on August 6, 2012. (Answer, ECF No. 27.)

5   **II.   DISCUSSION**

6       **A.   Procedural Grounds for Motion to Dismiss**

7       Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

8   petition if it "plainly appears from the petition and any attached exhibits that the petitioner is

9   not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254

10  Cases.

11      The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an

12  answer if the motion attacks the pleadings for failing to exhaust state remedies or being in

13  violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

14  Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

15  remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

16  grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp.

17  1189, 1194 & n. 12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss

18  after the court orders a response, and the Court should use Rule 4 standards to review the

19  motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

20      In this case, Respondent's motion to dismiss is based on a violation of the one-year

21  limitations period. 28 U.S.C. § 2244(d)(1). Because Respondent's motion to dismiss is similar

22  in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state

23  procedural default and Respondent has not yet filed a formal answer, the Court will review

24  Respondent's motion to dismiss pursuant to its authority under Rule 4.

25      **B.   Commencement of Limitations Period Under 28 U.S.C. § 2244(d)(1)(A)**

26      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

27  of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for

28  writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117

1  S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc),

2  *cert. denied,* 118 S.Ct. 586 (1997).

3      In this case, the petition was filed on February 12, 2011, and is subject to the provisions

4  of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners seeking to

5  file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).  As amended, § 2244,

6  subdivision (d) reads:

7          (1)  A 1-year period of limitation shall apply to an application for a writ of
   habeas corpus by a person in custody pursuant to the judgment of a State court.
8      The limitation period shall run from the latest of –

9              (A) the date on which the judgment became final by the conclusion of
       direct review or the expiration of the time for seeking such review;
10

11             (B) the date on which the impediment to filing an application created by
       State action in violation of the Constitution or laws of the United States is
       removed, if the applicant was prevented from filing by such State action;
12

13             (C) the date on which the constitutional right asserted was initially
       recognized by the Supreme Court, if the right has been newly recognized by the
       Supreme Court and made retroactively applicable to cases on collateral review;
14     or

15             (D) the date on which the factual predicate of the claim or claims
       presented could have been discovered through the exercise of due diligence.
16

17         (2) The time during which a properly filed application for State post-conviction
   or other collateral review with respect to the pertinent judgment or claim is
   pending shall not be counted toward any period of limitation under this
18     subsection.

19  28 U.S.C. § 2244(d).

20      Under § 2244(d)(1)(A), the limitations period begins running on the date that the

21  petitioner's direct review became final or the date of the expiration of the time for seeking such

22  review. In this case, the California Supreme Court denied review on April 30, 2008. The state

23  appeal process became final ninety days later, on July 29, 2008, when the time for seeking

24  certiorari with the United States Supreme Court expired. U.S. Supreme Court rule 13; <u>Bowen</u>

25  <u>v. Rowe</u>, 188 F.3d 1157 (9th Cir. 1999). The AEDPA statute of limitations began to run the

26  following day, on July 30, 2008. <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001).

27      Petitioner would have one year from July 30, 2008, absent applicable tolling, in which

28  to file his federal petition for writ of habeas corpus. However, Petitioner delayed in filing the

instant petition until February 12, 2011, over a year and a half after the statute of limitations period expired. Absent the later commencement of the statute of limitations or any applicable tolling, the instant petition is barred by the statute of limitations.

### C.   Tolling of the Statute of Limitations Period During State Court Appeals

28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214, 216 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. Id.

Here, the statute of limitations began to run on July 30, 2008. According to the state court records provided by Respondent, Petitioner filed his first petition for collateral relief, in the form of a petition for writ of habeas corpus, on October 19, 2008. (LD 5.) Respondent concedes that Petitioner is entitled to tolling with regard to this petition. However, 81 days of the limitation period passed before the application was filed. Based on such tolling, 284 days of the limitations period remained when the petition was denied on October 24, 2008.

Petitioner next filed an appeal with the Fifth District Court of Appeal on December 9, 2008, which was denied on January 5, 2009. The court denied the appeal as Petitioner was appealing a non-appealable order, and instead was required to file an original petition of writ of habeas corpus with the court of appeal. (LD 8.) In Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), the Supreme Court noted that a petition is filed "when it is

delivered to, and accepted by, the appropriate court officer for placement into the official record." Id. at 8. The court determined that such a petition is "*properly* filed" for § 2244(d)(2) purposes "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. (emphasis in original). The Supreme Court explained that applicable rules usually include "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. (citations omitted). In this case, the state court of appeal rejected Petitioner's attempt to appeal the denial on the ground that the order was not appealable, citing In re Crow, 4 Cal. 3d 613, 621 n.8, 94 Cal. Rptr. 254, 483 P.2d 1206 (1971) ("the prisoner cannot assert any right to appeal the denial of his petition for writ of habeas corpus. . . . Since the petitioner cannot appeal, his remedy lies in the petition for habeas corpus to a higher court"). The court thus refused to accept the notice of appeal because it was not "in compliance" with the procedural rules for seeking review of habeas petitions. Specifically, Petitioner's filing of an appeal rather than a petition for writ of habeas corpus was a failure to comply with applicable laws and rules regarding the form of the document to be filed. Accordingly, the appeal was not a properly filed application for state collateral review and Petitioner is not entitled to tolling. See Parsons v. Carey, 2006 U.S. Dist. LEXIS 12322 (E.D. Cal. Mar. 7, 2006).

Petitioner next filed a state habeas petition with the Fifth District Court of Appeal on February 16, 2009, which was denied on June 12, 2009. Here, Petitioner delayed 115 days from the denial of his superior court petition to the filing of his habeas petition (rather than notice of appeal) with the court of appeal. Such a delay is unreasonable, thereby making his petition untimely. See Velasquez v. Kirkland, 639 F.3d 964 (9th Cir. 2011) (eighty and ninety-one day delays in filing are unreasonable under California law and prevent tolling of AEDPA's one year statute of limitations.). Petitioner is not entitled to tolling for the period between filing his petitions.

115 days passed between the denial of Petitioner's superior court petition and the filing of his court of appeal petition. However, Petitioner is still entitled to tolling during the time in

1  which the second petition was filed. Accordingly, 169 days of the limitations period remained

2  as of June 12, 2009, the date the second petition was denied.

3      Respondent does not contest that Petitioner is entitled to tolling during the time which

4  petitioner sought habeas review with the court of appeal, and subsequently with the California

5  Supreme Court. Accordingly, Petitioner is entitled to tolling until the denial of his California

6  Supreme Court habeas petition on August 12, 2009. Accordingly, 169 days of the limitations

7  period remained as of August 12, 2009, the date the California Supreme Court petition was

8  denied.[13]

9      Petitioner next filed a state habeas petition with the Fifth District Court of Appeal on

10  August 25, 2009, which was denied on January, 2010. The petition appears to be identical to

11  the California Supreme Court petition denied on August 12, 2009. However, as the claims of

12  the petition were presented to, and denied by, the California Supreme Court, the petition

13  appears successive. In Banjo v. Ayers, 614 F.3d 964 (9th Cir. 2010), the Ninth Circuit

14  described when a second petition is considered to be a successive petition, and that the

15  period between such petitions is not entitled to tolling:

16      Only the time period during which a round of habeas review is pending
17  tolls the statute of limitation; periods between different rounds of collateral attack
    are not tolled. Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003). We employ
18  a two-part test to determine whether the period between the denial of one
    petition and the filing of a second petition should be tolled. Hemmerle v. Arizona,
19  495 F.3d 1069, 1075 (9th Cir. 2007); King v. Roe, 340 F.3d 821, 823 (9th Cir.
    2003), abrogated on other grounds by Chavis, 546 U.S. 189, 126 S. Ct. 846, 163
20  L. Ed. 2d 684. "First, we ask whether the petitioner's subsequent petitions are
    limited to an elaboration of the facts relating to the claims in the first petition."
21  King, 340 F.3d at 823. If the petitions are not related, then the subsequent
    petition constitutes a new round of collateral attack, and the time between them
22  is not tolled. Hemmerle, 495 F.3d at 1075; King, 340 F.3d at 823. If the
    successive petition was attempting to correct deficiencies of a prior petition,
    however, then the prisoner is still making "proper use of state court procedures,"

23

24      _____

25      [13] During this time period Petitioner filed his fifth action for collateral review, a petition for writ of habeas
    corpus with the superior court. As Petitioner is already entitled to tolling during that period, the petition is not
    relevant to the current timeliness inquiry.

26

27

28

1

2

and habeas review is still pending. King, 340 F.3d at 823 (quoting Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999)); Hemmerle, 495 F.3d at 1075. Second, if the successive petition was not timely filed, the period between the petitions is not tolled. Hemmerle, 495 F.3d at 1075; King, 340 F.3d at 823.

3

Banjo, 614 F.3d at 968-969.

4

5

6

7

Petitioner presented the same claims in his sixth petition, but does not appear to be attempting to correct deficiencies of the prior petitions. The sixth petition therefore constitutes a new round of collateral attack, and the time between the filing of the petitions is not tolled. In this case, Petitioner's petition to the California Supreme Court was denied on August 12,

8

9

10

2009, and the sixth petition was filed on August 25, 2009. As thirteen (13) days of the statute of limitations expired during this time, 156 days of the period remained as of August 25, 2009.

11

12

13

14

While Petitioner is not entitled to tolling for the period between filing petitions, Respondent concedes that Petitioner is entitled to tolling with regard to the time the sixth and eighth petitions were pending.[14]   As 156 days of the statute of limitations period remained before filing the petitions, 156 days of the limitations period still remained when the eighth petition was denied on February 24, 2010.

15

16

17

18

19

20

21

22

23

Petitioner next filed his ninth state habeas petition with the California Supreme Court on December 4, 2009, which was denied on June 9, 2010. The California Supreme Court found the petition untimely. The court cited In re Clark, 5 Cal. 4th 750 (1993), and In re Robbins, 18 Cal. 4th 770, 780 (1998), both of which stand for the proposition that untimely petitions will not be permitted. (LD Nos. 21-22.) A habeas petition rejected by the state court as untimely is not "properly filed" for purposes of AEDPA tolling. Pace, 544 U.S. at 414-415; Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005). Only "properly filed" state petitions are entitled to AEDPA tolling. 28 U.S.C. § 2244(d)(2). "When a post-conviction petition is untimely

24

25

26

---

[14] During this time period Petitioner filed his seventh and tenth actions for collateral review, a petition for writ of habeas corpus with the superior court and a petition with the court of appeal. As Petitioner is already entitled to tolling during that period, the petitions are not relevant to the current timeliness inquiry.

27

28

1    under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'" <u>Bonner</u>, 425 F.3d

2    at 1148 (quoting <u>Pace</u>, 544 U.S. at 414). Petitioner's ninth state petition does not toll the

3    one-year statute of limitations.

4        Accordingly, 156 days of the limitations period remained as of February 24, 2010, the

5    date the eighth petition was denied. The instant petition was filed on February 12, 2011.

6    However, the statute of limitations expired on July 30, 2010, six months before the instant

7    federal petition was filed. The petition is therefore untimely.

8       **D.**    **<u>Equitable Tolling</u>**

9        The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1)

10    that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

11    stood in his way." <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2560-62 (2010); quoting <u>Pace v.</u>

12    <u>DiGuglielmo</u>. Petitioner bears the burden of alleging facts that would give rise to tolling. <u>Pace</u>,

13    544 U.S. at 418; <u>Hinton v. Pac. Enters.</u>, 5 F.3d 391, 395 (9th Cir.1993). Petitioner presents

14    two grounds for equitable tolling based on: (1) Petitioner's lack of skill in the law, and (2)

15    Petitioner's mental incompetence. The Court shall address Petitioner's claims in turn.

16           **1.**     <u>Ignorance of the Law</u>

17        Petitioner claims he should be entitled to equitable tolling because he is uneducated

18    and does not have knowledge of the law. Petitioner, in his response to the motion to dismiss,

19    describes his diligence in pursuing relief by way of drafting significant correspondence to

20    different organizations in an attempt to advance his collateral challenges. (<u>See</u> Response,

21    ECF No. 17.) Assuming that Petitioner did take the actions stated in his response, and was

22    diligent in his efforts to gain assistance to seek collateral relief, Petitioner still must show that

23    an extraordinary circumstance stood in his way. To the extent that Petitioner contends that the

24    extraordinary circumstance was his lack of understanding of the law, his claim for equitable

25    tolling must fail. <u>Raspberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006) (pro se lack of legal

26

27

28

1   sophistication is not an extraordinary circumstance warranting equitable tolling); Turner v.

2   Johnson, 177 F.3d 390, 392 (5th Cir. 1999), (inmate's lack of legal training, a poor education,

3   or illiteracy does not give a court reason to toll the limitations period); Shoemate v. Norris, 390

4   F.3d 595, 598 (8th Cir. 2004); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000).

5       Petitioner's circumstances are no different than the majority of incarcerated prisoners

6   attempting to file petitions for writ of habeas corpus. Accordingly, his ignorance of the law is

7   not an extraordinary circumstance entitling Petitioner to equitable tolling.

8                  2.      Mental Incompetence

9       Under some circumstances, a mental illness can represent an extraordinary

10   circumstance justifying equitable tolling. See Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir.

11   2003) (remanded to determine whether mental illness prevented petitioner from timely filing).

12   In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Court of Appeals for the Ninth Circuit

13   determined that courts should use a two part test to evaluate the application of equitable tolling

14   in cases where petitioner suffers from a mental impairment. Id.

15       (1) First, a petitioner must show his mental impairment was an "extraordinary
        circumstance" beyond his control, see Holland, 130 S. Ct. at 2562, by
16       demonstrating the impairment was so severe that either

17          (a) petitioner was unable rationally or factually to personally
            understand the need to timely file, or
18
            (b) petitioner's mental state rendered him unable personally to
19          prepare a habeas petition and effectuate its filing. [Footnote
            omitted]
20
        (2) Second, the petitioner must show diligence in pursuing the claims to the
21       extent he could understand them, but that the mental impairment made it
        impossible to meet the filing deadline under the totality of the circumstances,
22       including reasonably available access to assistance. See id.

23   Bills, 628 F.3d at 1100.

24       A petitioner who "makes a good-faith allegation that would, if true, entitle him to

25   equitable tolling" may be entitled to an evidentiary hearing. Roy v. Lampert, 465 F.3d 964, 969

26   (9th Cir. 2006) (quoting Laws, 351 F.3d at 919). However, a district court is not obligated to

27   hold an evidentiary hearing to further develop the factual record, even when a petitioner

28   alleges mental incompetence, when the record is sufficiently developed, and it indicates that

U.S. District Court
E. D. California

-11-

1   the petitioner's mental incompetence was not so severe as to cause the untimely filing of his

2   habeas petition. Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010).

3       In the instant case, the relevant period is between July 30, 2008, when the one-year

4   limitations period began, and February 12, 2011, the date the instant petition was

5   constructively filed. See Laws, 351 F.3d at 923 ("Laws was adjudicated competent to stand

6   trial in 1993, notwithstanding evidence of serious mental illness. But that determination has

7   little bearing on his competence vel non during the period 1996-2000[,]" . . . "the years when

8   his petitions should have been filed.")

9       With his response to the motion to dismiss, Petitioner provided some medical records

10  in support of his claim that he should be entitled to tolling based on mental incompetence.

11  Petitioner claims that prior to 2005, he was under the care of a licensed psychologist and

12  prescribed medications for his paranoia and antisocial conditions. (Response at 7, ECF No.

13  17.) Petitioner also asserts that despite not having a mental health competency hearing before

14  trial, at least one doctor found him not to be sane and that he suffers from post traumatic

15  stress disorder, paranoid personality disorder, and anti-social disorder. (Response at 7-8.)

16  Attached to the response, Petitioner included a copy of a statement of parent or caretaker

17  incapacity from 2005 which states that Petitioner requires childcare assistance due to his

18  mental health issues. (Response at 62.) Petitioner blames his mental health as the reason that

19  he filed his state petitions in an erratic manner. (Response at 7-8.)

20      Respondent then filed a reply and attaching 164 pages of exhibits relating to Petitioner's

21  mental health during the relevant time period. (Reply, ECF No. 22.) Respondent provided

22  medical records from 2007 to 2011. In May 2008, just prior to the relevant period, Petitioner

23  was diagnosed with depression and adjustment disorder, had a history of auditory

24  hallucinations and lack of sleep, and although he previously had been prescribed antipsychotic

25  medications, none were previded during this period.. (Reply, Ex. A at 5-7.) Petitioner's

26  subsequent annual mental health reviews for 2009 and 2010 provide similar information, but

27  note Petitioner's lack of  cooperation and belief  that mental health services could not provide

28  him assistance.

U.S. District Court
E. D. California

-12-

1    Respondent provided mental health progress notes for Petitioner's treatment from 2008

2    to 2010. (Reply, Ex. A at 33-86.) The notes reflect that Petitioner remained depressed

3    throughout the period and slept only several hours a night. (Id.) However, on several

4    occasions, Petitioner was uncooperative and did not want to receive mental health service

5    assistance. (Id.)   The documents assessing Petitioner's cognitive functioning, while

6    recognizing he suffered from depression and paranoid personality disorder, largely indicate

7    that he was alert, oriented, organized, coherent, and cooperative. (Id., Ex. A at pp. 5, 27, 33,

8    34, 37, 40, 52, 59, 70, 80, 86, 87.) Some of the documents reflect that Petitioner had auditory

9    hallucinations primarily before his incarceration, but not during the limitations period. (Id., Ex.

10   A at 4, 8, 11, 16, 18, 19, 20, 22, 23, 24, 25, 28, 30, 66.) Other documents reflect that Petitioner

11   did not want and refused to take medication. (Id., Ex. A at 29, 32, 33, 37, 40, 43, 45, 47, 50,

12   53, 54, 55, 60, 61, 72, 73.)

13   Furthermore, the documents reveal that while Petitioner was included in the mental

14   health treatment program, he participated only as an outpatient in the Correctional Clinical

15   Case Management System (CCCMS) level of care and was usually housed in the general

16   prison population. On April 7, 2011, Petitioner was removed completely from the mental health

17   treatment program. (Id., Ex. A at pp. 61, 79, 85, 86.) While Petitioner was removed from

18   CCCMS, it is unclear if his removal was based on  freedom from symptoms or Petitioner's lack

19   of cooperation. For example, on March 15, 2011, less than a month before Petitioner was

20   removed from CCCMS, progress notes indicate that Petitioner "filled out refusal form and left,

21   but returned upon officers request. Reports not liking or needing to talk but wanting to remain

22   in [CCCMS] because 'he knows he needs it.'" (Id. at 59.) On April 7, 2011, treatment notes

23   indicate that Petitioner had no interest in talking, does not want psychiatric medication, and

24   has no interest in getting treatment. (Id. at 61.)

25   Petitioner's GAF[15] scores were fairly stable and ranged from 58 to 65 during the

26

27   [15] "GAF" is an acronym for "Global Assessment of Functioning," a scale used by clinicians to assess an
     individual's overall level of functioning, including the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of
28   Mental Disorders with Text Revisions 32 (4th ed. 2004). A GAF of 61-70 indicates some mild symptoms (e.g.,
     depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e,g, occasional

1 relevant period. (Id., Ex. A at 9, 12, 34, 37, 40, 43, 45, 47, 49-55, 59, 72-3, 78.) While

2 Petitioner's GAF scores indicate moderate symptoms, when he was willing to talk he was often

3 noted to be cooperative and to have goal directed and linear thought processes. (Id.)

4 　　　Thus, review of the medical records confirms that Petitioner was routinely seen on an

5 outpatient basis for his mental health care issues, and that Petitioner was stable without

6 medications. During the majority of the relevant period, petitioner was assigned to the CCCMS

7 level of care, which "suggests that petitioner was able to function despite his mental

8 problems." Washington v. McDonald, 2010 U.S. Dist. LEXIS 17437, 2010 WL 1999469, at *2

9 (C.D. Cal. Feb. 19, 2010).

10 　　　In addition, as noted by Respondent, Petitioner provided no factual allegations to

11 demonstrate his mental illness was so severe that he was unable to understand the need to

12 timely file or that the illness rendered him unable to prepare a habeas petition and file it.

13 During the time the statute of limitations period was running, medical records demonstrate that

14 petitioner was diagnosed with moderate mental illness that required no medication. There is

15 no indication that Petitioner was being treated for incompetence or being specially housed due

16 to his mental health issues. Rather, Petitioner was housed in the general population. The

17 medical records do not demonstrate a medical incapacity so severe that it prevented Petitioner

18 from understanding and acting on his rights. Petitioner was generally oriented, able to

19 communicate, and able to understand communications by others.

20 　　　Thus, while Petitioner suffered from mental illness during the relevant period, Petitioner

21 failed to demonstrate that his mental impairment was so severe that he was unable to either

22 understand the need to file or to personally prepare and file a habeas petition from 2008 to

23

24 truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech,
25 occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.) Id. A 41-50 rating indicates serious symptoms such as suicidal ideation, severe
26 obsessional rituals, or serious impairment in social, work, or school functioning. A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major
27 impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children,
28 is defiant at home, and is failing at school.)" Id.

U.S. District Court
E. D. California                              -14-

1    2010. Accordingly, Petitioner does not meet the first prong of the <u>Bills</u> test.

2           Even if Petitioner's mental illness was so severe as to meet the first prong of <u>Bills</u>,

3    Petitioner failed to address the second prong issue of diligence. Petitioner "must diligently

4    seek assistance and exploit whatever assistance is reasonably available." <u>Bills</u>, 628 F.3d at

5    1100. A Petitioner may satisfy the diligence prong if "the petitioner's mental impairment

6    prevented him from locating assistance or communicating with or sufficiently supervising any

7    assistance actually found." <u>Id.</u> But, as the Supreme Court noted in <u>Holland</u>, the diligence

8    requirement is not maximum diligence but rather reasonable diligence. <u>Id.</u> Thus, the court must

9    examine whether, given Petitioner's impairments, he was sufficiently diligent.

10          Here, Petitioner alleged no facts showing that he attempted to obtain assistance in

11   order to file a timely petition, or that his alleged mental problems prevented him from locating

12   or communicating with others for assistance. Instead records reflect that Petitioner filed ten

13   state habeas petitions, raising substantive legal challenges, albeit in an erratic manner.

14   Petitioner must do more than simply assert his mental impairments to establish that he is

15   entitled to equitable tolling. Review of the medical records demonstrate that Petitioner was

16   able to communicate clearly with medical professionals, but at times chose  not to. Records

17   also reflect that Petitioner, either by himself, or with assistance was able to file habeas

18   petitions. Petitioner has alleged no facts demonstrating a causal connection between his

19   alleged mental illness and his inability to file a timely petition. "Without any allegation or

20   evidence of how petitioner's symptoms actually caused him not to be able to file despite his

21   diligence, the court cannot find that he is entitled to equitable tolling." <u>Taylor v. Knowles</u>, 2009

22   U.S. Dist. LEXIS 20110, 2009 WL 688615, at *6 (E.D. Cal. March 13, 2009), aff'd, 368 Fed.

23   Appx. 796 (9th Cir. 2010) (no equitable tolling where petitioner failed to show his auditory

24   hallucinations, severe depression, and anxiety "actually caused him not to be able to file

25   despite his diligence"); <u>see Howell v. Roe</u>, 2003 U.S. Dist. LEXIS 2458, 2003 WL 403353, *4

26   (N.D. Cal. Feb. 20, 2003) (rejecting equitable tolling where petitioner's suicidal nature and

27   depression did not make him mentally incompetent). Here, Petitioner failed to allege how his

28   condition interfered with his ability to timely file the instant petition.

U.S. District Court
E. D. California

1    Accordingly, Petitioner has not shown that his mental impairment was an "extraordinary

2   circumstance" beyond his control, to where he was unable rationally or factually to personally

3   understand the need to timely file, or being unable personally to prepare a habeas petition and

4   effectuate its filing. Bills, 628 F.3d at 1100. Petitioner's  asserttion that he was diligently

5   protecting his rights by sending correspondence and preparing multiple state habeas petitions

6   (See Response, ECF No. 17.) is not relevant in light of his failure to show that his mental

7   impairment was an "extraordinary circumstance" beyond his control. Petitioner is not entitled

8   to equitable tolling, and his claims remain barred by the statute of limitations.

9   **III.    CONCLUSION**

10   As explained above, Petitioner failed to file the instant petition for Habeas Corpus within

11   the one year limitation period required by 28 U.S.C. § 2244(d).  Petitioner is entitled to the

12   benefit of statutory tolling, however, his federal petition was still untimely filed. Further,

13   Petitioner was not entitled to equitable tolling. Based on the foregoing, this Court recommends

14   that Respondent's motion to dismiss be GRANTED.

15   **IV.    RECOMMENDATION**

16   Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss for

17   Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period be

18   GRANTED.

19   This Findings and Recommendation is submitted to the assigned United States District

20   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

21   Local Rules of Practice for the United States District Court, Eastern District of California.

22   Within thirty (30) days after the date of service of this Findings and Recommendation, any

23   party may file written objections with the Court and serve a copy on all parties.  Such a

24   document should be captioned "Objections to Magistrate Judge's Findings and

25   Recommendation."  Replies to the Objections shall be served and filed within fourteen (14)

26   days after service of the Objections. The Finding and Recommendation will then be submitted

27   to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

28   (b)(1)(c).  The parties are advised that failure to file objections within the specified time may

1    waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
2    Cir. 1991).
3
4
5    IT IS SO ORDERED.
6    Dated:    August 10, 2012          /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. District Court
E. D. California                                    -17-